IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAVON WILLIAMS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ARAMARK CAMPUS LLC, et al. | : | NO. 18-5374 |

### MEMORANDUM

Padova, J.                                                                                           March 11, 2020

Plaintiff Shavon Williams brings claims asserting pregnancy discrimination in violation of federal, state, and local law against her former employer, Defendant Aramark Campus LLC ("Aramark") and her former Aramark supervisors, Defendants Chris Ansardi, Levi Caster, Steve Mauz, and Ivette Torres. Defendants have moved to dismiss the First Amended Complaint (the "Complaint") in part pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, we grant the Motion in part and deny it in part.

## I.    BACKGROUND

The Complaint alleges the following facts. Plaintiff was hired by Aramark on February 24, 2017 as a full-time cook at LaSalle University. (Compl. ¶ 20.) Plaintiff returned to work after the summer break on August 22, 2017 to start the fall semester. (Id. ¶ 21.) She was about 4.5 months pregnant at the time. (Id. ¶ 22.) Prior to returning, Plaintiff informed several of Aramark's managers that she had become pregnant. (Id.) Plaintiff also informed her supervisors that she had medical complications related to her pregnancy. (Id. ¶ 23.) As a result of her pregnancy, Plaintiff was required to take frequent breaks to sit and stretch. (Id.)

About two weeks after she returned to work for the fall semester, Plaintiff asked Torres to watch her workstation because she needed to use the restroom. (Id. ¶ 26.) Torres refused because

"it was 'not in her job description.'" (Id.) Later that day, Torres overheard Plaintiff discussing this incident and falsely accused Plaintiff of cursing at her. (Id. ¶ 27.) As a result, Defendants sent Plaintiff home for the day. (Id.) The following day, Defendants reprimanded Plaintiff for acting unprofessionally. (Id.)

Over the next several weeks, Defendants regularly denied Plaintiff restroom and rest breaks. (Id. ¶ 28.) Even though Plaintiff regularly reported these denials to her supervisors, Defendants did not remedy the situation. (Id.) Defendants typically responded to Plaintiff's complaints by telling her to "'be patient.'" (Id.) During this time, Plaintiff brought Defendants a note from her doctor restricting her to light duty work. (Id. ¶ 29.) Defendants did not modify Plaintiff's schedule in accordance with this restriction or provide her with necessary breaks. (Id.) When Plaintiff addressed Defendants' failure to comply with her doctor's orders, "she was told that her doctor's note was 'not specific enough.'" (Id. ¶ 25.) Moreover, on one occasion, Torres asked Plaintiff "'how are we going to do special things for you if we have other things to do?'" (Id. ¶ 30.) Yet, Defendants made accommodations for other employees who were not pregnant or disabled. (Id. ¶ 31.)

On September 25, 2017, after Defendants had denied Plaintiff's requests for breaks for approximately three weeks, Plaintiff began suffering severe pain in her lower abdomen and was admitted to Penn Medicine's Perinatal Evaluation Center with pre-term labor as a result of overexertion. (Id. ¶ 34.) Following her hospital visit, Plaintiff provided Ansardi with another doctor's note specifying that she had pre-term labor and round ligament pain and that she required regular rest breaks. (Id. ¶ 35.) Nevertheless, Defendants continued to fail to provide Plaintiff with requested rest breaks at least three to four days of the workweek. (Id. ¶ 36.)

On September 16, 2017, Plaintiff filed a grievance with her union regarding the denial of her requests for breaks to accommodate her medical condition and management's failure to respond to this issue. (<u>Id.</u> ¶ 32.) Defendants did nothing to address this issue. (<u>Id.</u>) When Plaintiff reminded Ansardi about her pregnancy-related disability and her need for rest breaks, he claimed he would "'say something about it.'" (<u>Id.</u> ¶ 33.) However, Defendants continued to deny Plaintiff's requests for breaks. (<u>Id.</u>)

On October 10, 2017, Mauz approached Plaintiff regarding her September 16 grievance. (<u>Id.</u> ¶ 37.) Mauz told Plaintiff "'when I first read your grievance, I disregarded it because you sounded like an angry person,'" and told Plaintiff that her contract only entitled her to a break after four hours of work. (<u>Id.</u>) He also stated it "'wasn't that busy' when he visited, so he did not see a problem with employees not getting breaks." (<u>Id.</u>)

After Plaintiff began to complain that Defendants were not giving her requested breaks, Defendants instituted a new uniform rule that barred her from wearing "stretch/yoga" pants as part of her uniform even though she wore the pants because of her pregnancy. (<u>Id.</u> ¶ 38.) Ansardi claimed that there had been an anonymous student complaint made on a Monday—Plaintiff's day off—that Plaintiff's pants were inappropriate. (<u>Id.</u>) Plaintiff questioned the veracity of the complaint, but Ansardi told her "'not to dwell on the past' and that she was 'always complaining.'" (<u>Id.</u> ¶ 39.) Defendants also began to nitpick about Plaintiff's appearance at work by, for example, telling her that her "earrings were 'too big.'" (<u>Id.</u> ¶ 40.) When Plaintiff asked Mauz why he had singled her out for this criticism, he told her that "things 'aren't going to change overnight.'" (<u>Id.</u>)

On October 23, 2017, Plaintiff passed out from overexertion while she was working "and was taken to the hospital via ambulance, where she was told that she was hypoglycemic." (<u>Id.</u> ¶ 41.) After she returned to work, Defendants continued to ignore her medical restrictions and

requests for breaks.  (Id. ¶ 42.)  On November 1, 2017, Plaintiff resigned because her working conditions were unbearable.  (Id. ¶ 43.)

The Complaint asserts ten counts under federal, state, and local law.  Counts I and II assert claims against all Defendants under Title VII of the Civil Right Act of 1964 (Title VII) for discrimination in violation of 42 U.S.C. § 2000e-2(a) (Count I) and creating a hostile work environment in violation of 42 U.S.C. § 2000e and retaliation in violation of 42 U.S.C. § 2000e-3(a) (Count II).  Counts III and IV assert claims against all Defendants under the Americans with Disabilities Act (ADA) for discrimination and creating a hostile work environment in violation of 42 U.S.C. § 12112(a) (Count III) and retaliation in violation of 42 U.S.C. § 12203(a) (Count IV). Counts V and VI assert claims against all Defendants under the Pennsylvania Human Relations Act (PHRA) for discrimination and creating a hostile work environment in violation of 43 Pa. Stat. Ann. § 955(a) (Count V) and retaliation in violation of 43 Pa. Stat. Ann. § 955(d) (Count VI). Count VII asserts a claim for aiding and abetting discrimination under the PHRA in violation of 43 Pa. Stat. Ann. § 955(e) against Ansardi, Caster, Mauz, and Torres.  Counts VIII and IX assert claims against all Defendants under the Philadelphia Fair Practices Ordinance (PFPO) for discrimination and creating a hostile work environment in violation of Philadelphia Code § 9-1103(1) (Count VIII) and retaliation in violation of Philadelphia Code § 9-1103(1)(g) (Count IX). Count X asserts a claim for aiding and abetting discrimination in violation of Philadelphia Code § 9-1103(1)(h) against Ansardi, Caster, Mauz, and Torres.

## II.    LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."

Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as we are "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

Defendants have moved to dismiss most of the claims asserted in the Complaint. They do not seek dismissal of Plaintiff's discrimination and retaliation claims against Aramark in Counts

I, II, III, IV, V, VI, VIII, and IX insofar as these claims are based on Defendants' alleged denial of

Plaintiff's requests for breaks. (Def.'s Mem. at 2 n.1.) Plaintiff's remaining claims fall into four

categories: (1) discrimination claims asserted against the individual Defendants in Counts I, III,

V, and VIII based on allegations that Defendants denied Plaintiff's requests for breaks; (2) hostile

work environment claims asserted against all Defendants in Counts II, III, V, and VIII based on

allegations that Defendants denied Plaintiff's requests for breaks; (3) retaliation claims asserted

against all Defendants in Counts II, IV, VI, and IX based on the following conduct: (a) Plaintiff's

early dismissal from work ("Early Dismissal from Work"); (b) the institution of a new uniform

rule to prevent Plaintiff from wearing stretch/yoga pants (the "New Uniform Rule"); (c) the

nitpicking of Plaintiff's appearance ("Nitpicking"); and (d) the denial of Plaintiff's requests for

breaks; and (4) aiding and abetting claims asserted against the individual Defendants in Counts VII

and X predicated on Aramark's alleged misconduct.

Defendants argue that all claims against the individual Defendants brought under Title VII

and the ADA must be dismissed because there is no individual liability under Title VII and the

ADA and we grant the Motion with regard to this argument.[1] Defendants also argue that Plaintiff's

---

[1] Defendants are correct that Title VII and the ADA do not recognize individual employee liability. Vangjeli v. City of Philadelphia, 655 F. App'x 132, 133 (3d Cir. 2016) ("Title VII does not recognize individual employee liability." (citing Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1077-78 (3d Cir. 1996)) (en banc)); Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 178 (3d Cir. 2002) ("[T]here appears to be no individual liability for damages under Title I of the ADA . . . ." (citation omitted)). Plaintiff has clarified in her Opposition Memorandum that "she is not asserting claims against individual Defendants Ansardi, Caster, Mauz, and Torres under Title VII of the Civil Rights Act or the ADA . . . ." (Pl.'s Opp. at 21 n.6.) As a result, to the extent that the Complaint can be read to assert Title VII and ADA claims against the individual Defendants in Counts I-IV, those claims are dismissed.

Defendants also argue that all claims against Levi Caster should be dismissed because the Complaint does not specifically tie him to any of the alleged misconduct. During the hearing held on January 23, 2020, Plaintiff conceded that the Complaint does not include any allegations attributing misconduct to Caster and stated that she did not oppose the Motion insofar as it seeks

claims for discrimination, hostile work environment, and retaliation should be dismissed because the Complaint fails to sufficiently plead the elements of such claims. Lastly, Defendants argue that Plaintiff's aiding and abetting claims should be dismissed because the Complaint does not plead cognizable predicate offenses committed by Aramark.

A. Discrimination Claims

Defendants have moved to dismiss Plaintiff's discrimination claims asserted against Ansardi, Mauz, and Torres in Counts V and VIII. Plaintiff asserts that Ansardi, Mauz, and Torres discriminated against her by denying her requests for breaks in violation of the PHRA and the PFPO. We analyze Plaintiff's discrimination claims under the McDonnell Douglas burden shifting framework because the Complaint does not allege facts that would constitute direct evidence of discrimination. McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802-03 (1973) (describing the burden shifting framework to be utilized in Title VII cases).[2] Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802; see also Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). If the plaintiff does so, the burden then shifts to her employer to "'articulate some legitimate, nondiscriminatory reason'" for the adverse employment action taken against her. Sarullo, 352 F.3d at 797 (quoting McDonnell Douglas, 411 U.S. at 802). If the employer meets this burden,

to dismiss all claims against Caster. (See 1/23/20 Hr'g Tr. 4:9-19.) Thus, we grant Defendants' Motion to Dismiss insofar as it seeks to dismiss all claims brought against Caster.

[2] Plaintiff brings her claims under Title VII, the ADA, the PHRA, and the PFPO. Claims brought under these statutes are analyzed using the same legal framework; therefore, all of these claims may be analyzed together. See Ives v. NHS Human Servs., Inc., Civ. A. No. 15-5317, 2016 WL 4039644, at *2 n.1 (E.D. Pa. July 28, 2016) ("Title VII, the PHRA, and the PFPO are so similar that employment discrimination under any one of them is generally presumed to constitute employment discrimination under the other two as well." (citations omitted)); Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) ("The PHRA is basically the same as the ADA in relevant respects and Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts." (alteration in original) (quotation omitted)).

"[t]he plaintiff must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Id. (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas, 411 U.S. at 804). Under the McDonnell Douglas framework, in order to allege a facially plausible prima facie case of employment discrimination in violation of Title VII, the ADA, the PHRA, or the PFPO, a complaint must allege facts that, if true, would establish the following elements: (1) the plaintiff "is a member of a protected class;" (2) the plaintiff was qualified for the position she held; (3) the plaintiff "suffered an adverse employment action;" and (4) the adverse employment action "occurred under circumstances that could give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing McDonnell Douglas, 411 U.S. at 802) (add'l citation omitted).

The United States Court of Appeals for the Third Circuit has "modified [the McDonnell Douglas framework in] . . . pregnancy discrimination [cases] to require that an employer have actual knowledge of an employees' pregnancy, reasoning that 'pregnancy, of course, is different in that its obviousness varies, both temporally and as between different affected individuals.'" Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 365 (3d Cir. 2008) (quoting Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996)). Accordingly, in order to state a facially plausible prima facie claim for pregnancy discrimination, a complaint must allege that "'(1) [the plaintiff] was pregnant and that her employer knew of the pregnancy; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) there is a nexus between her pregnancy and the adverse employment action.'" Snider v. Wolfington Body Co., Inc., Civ. A. No. 16-2843, 2016 WL 6071359, at *3 (E.D. Pa. Oct. 17, 2016) (quoting Laverty v. Drexel Univ., Civ. A. No. 14-5511, 2016 WL 245307, at *6 (E.D. Pa. Jan. 21, 2016)).

Defendants argue that Plaintiff's PHRA and PFPO discrimination claims asserted against Ansardi, Mauz, and Torres should be dismissed because the Complaint does not allege facts that can establish that Ansardi, Mauz, and Torres knew that Plaintiff was pregnant or that they were the individuals who denied her requests for breaks. The Complaint contains the following factual allegations regarding the individual Defendants' knowledge of Plaintiff's pregnancy and the denial of her requests for breaks: "Plaintiff reminded . . . ANSARDI about her pregnancy-related disability . . . but Plaintiff continued to be denied necessary rest breaks" (Compl. ¶ 33); "MAUZ came to Plaintiff to discuss the grievance that Plaintiff had filed [regarding lack of breaks]" and "[d]uring that conversation, MAUZ *admitted* to ignoring Plaintiff's grievance" and he stated that "he did not see a problem with employees not getting breaks" (id. ¶ 37); and "TORRES . . . stated to Plaintiff 'how are we going to do special things for you if we have other things to do?' regarding Plaintiff's pregnancy and requests for a rest break" (id. ¶ 30). Viewing these allegations in the light most favorable to Plaintiff, we find that they suggest that each of these Defendants was aware that Plaintiff was seeking rest breaks because of her pregnancy and that these Defendants did not accommodate her requests for the breaks. See DelRio-Mocci, 672 F.3d at 245 (citation omitted). Thus, we conclude that the Complaint plausibly alleges that Ansardi, Mauz, and Torres each knew that Plaintiff was pregnant and that they denied her requests for rest breaks.[3] Accordingly, we

---

[3] Defendants also assert that Plaintiff could not have informed Torres about her pregnancy because she did not work with Torres at Aramark at the time she allegedly informed individuals at Aramark about her pregnancy. However, the Complaint does not allege facts that support this assertion. Thus, we cannot consider this assertion as a basis for dismissing Plaintiff's PHRA and PFPO claims against Torres. See Mayer, 605 F.3d at 230 (stating that when deciding a motion pursuant to Rule 12(b)(6), "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents" (citing Pension Benefit Guar. Corp., 998 F.2d at 1196)).

deny the Motion to Dismiss as to Plaintiff's discrimination claims asserted against Ansardi, Mauz, and Torres in Counts V and VIII.

   B.  Hostile Work Environment Claims

Defendants have moved to dismiss Plaintiff's hostile work environment claims asserted against all Defendants in Counts II, III, V, and VIII.  These claims assert that Defendants created a hostile work environment which led to Plaintiff's constructive discharge in violation of Title VII, the ADA, the PHRA, and the PFPO.[4]  In order to state a facially plausible hostile work environment claim, a complaint must allege that plaintiff's "work environment was so pervaded by discrimination that the terms and conditions of employment were altered."  Vance v. Ball State Univ., 570 U.S. 421, 427 (2013) (citing Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993)).  Specifically, a complaint must allege facts that would, if proven, establish the following:  "'1) the employee suffered intentional discrimination because of [her pregnancy], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability . . . .'"  Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (quoting Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013)).  A complaint may allege the first element of a hostile work environment claim, i.e., intentional discrimination, by plausibly alleging facts that give rise to an inference of intentional discrimination "by way of comparators," specifically, by alleging that "'similarly situated persons who are not members of [plaintiff's] protected class were treated more favorably . . . .'"  Mojica

---

[4] Like Plaintiff's discrimination claims, Plaintiff's hostile work environment claims are based only on allegations that Defendants denied Plaintiff's requests for breaks.  (See Pl. Opp. at 18.)

10

v. Advance Auto Parts, Inc., Civ. A. No. 15-1418, 2016 WL 107844, at *4-5 (E.D. Pa. Jan. 11, 2016) (quoting Warfield v. SEPTA, 460 F. App'x 127, 130 (3d Cir. 2012)).

Defendants argue that we should dismiss Plaintiff's hostile work environment claims because the Complaint does not directly allege that Plaintiff was subjected to intentional discrimination. "[M]istreatment that is not motivated by the plaintiff's protected class does not create a hostile work environment." Fusco v. Bucks Cty. of Pennsylvania, Civ. A. No. 08-2082, 2009 WL 4911938, at *9 (E.D. Pa. Dec. 18, 2009) (quotation omitted). Thus, "[w]hile it is not necessary for a . . . defendant to use words that overtly implicate [discriminatory] animus to create a hostile work environment, comments that cannot be reasonably construed as invoking any [discriminatory] feeling do not support . . . liability." Davis v. City of Newark, 285 F. App'x 899, 902 (3d Cir. 2008); see also Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home, Civ. A. No. 13-2463, 2014 WL 2921534, at *2 (E.D. Pa. June 27, 2014) ("Plaintiff cannot meet her pleading burden 'simply by asserting an event and then asserting that it was motivated by [discriminatory animus].'" (alteration in original) (quoting Davis, 285 F. App'x at 903)).

The Complaint alleges that the following comments were made to Plaintiff: "her doctor's note was 'not specific enough'" (Compl. ¶ 25); Torres would not watch Plaintiff's workstation because it was "'not in her job description'" (id. ¶ 26); Plaintiff was told to "'be patient' when she reported that she was not receiving necessary breaks" (id. ¶ 28); Torres asked Plaintiff "'how are we going to do special things for you if we have other things to do?'" (id. ¶ 30); Ansardi told Plaintiff that he would "'say something'" about Plaintiff's pregnancy-related disability and her need for breaks, but her requests for breaks were still denied (id. ¶ 33); Mauz admitted to Plaintiff that he had ignored her grievance "'because [she] sounded like an angry person'" (id. ¶ 37); Mauz also told Plaintiff to "'read her contract' because the contract stated that Plaintiff was only entitled

a break after four (4) hours of work" (id.); Ansardi told Plaintiff "to 'not dwell on the past' and that she was 'always complaining'" (id. ¶ 39); and Mauz told Plaintiff that things "'aren't going to change overnight'" (id. ¶ 40). None of these allegations could reasonably be construed as invoking a discriminatory feeling. See Davis, 285 F. App'x at 902 (affirming dismissal of plaintiff's hostile work environment claim because the complaint failed to allege that any incident was "motivated by racial discrimination"). These allegations thus fail to directly allege facts that would establish that Plaintiff suffered intentional discrimination.

Defendants also argue that we should dismiss Plaintiff's hostile work environment claims because the Complaint fails to allege intentional discrimination through the use of comparators. See Mojica, 2016 WL 107844, at *5 (explaining that an inference of discrimination can be shown "by way of comparators"). "To show discrimination by way of comparators, 'comparator employees must be similarly situated in all relevant respects,' the determination of which 'takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in.'" Mojica, 2016 WL 107844, at *5 (quoting Wilcher v. Postmaster Gen., 441 F. App'x 879, 882 (3d Cir. 2011)); cf. Danao v. ABM Janitorial Servs., Civ. A. No. 14-6621, 2015 WL 2378644, at *11 (E.D. Pa. May 19, 2015) (dismissing plaintiff's race discrimination claims because the complaint failed to allege "any factual details suggesting how similarly-situated Caucasian members were treated better by the Union").

The Complaint alleges that "Defendant's other non-pregnant and non-disabled employees were granted accommodations when necessary, such as child care needs." (Compl. ¶ 31.) However, the Complaint does not allege facts that would show that these other employees were similarly situated to Plaintiff in any respect. Indeed, the Complaint does not describe the other employees' job responsibilities, indicate whether the supervisors denying her requests were the

ones granting other employees' requests, or allege that the other employees' requests were similar in nature to Plaintiff's requests for breaks, which were necessitated by her pregnancy and pregnancy related medical complications. Thus, we conclude that the Complaint does not allege facts that would support an inference, based on comparators, that Plaintiff suffered intentional discrimination. We further conclude, accordingly, that the Complaint fails to allege facially plausible hostile work environment claims under Title VII, the ADA, the PHRA, and the PFPO.

Defendants further argue that we should dismiss Plaintiff's hostile work environment claims because the Complaint does not allege that the hostile work environment led to her constructive discharge. "To establish constructive discharge, plaintiffs must show both a hostile work environment and that 'the abusive working environment became so intolerable that . . . resignation qualified as a fitting response.'" Lewis v. Univ. of Pennsylvania, 779 F. App'x 920, 922 (3d Cir. 2019) (quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 133-34 (2004)). Because we conclude that the Complaint fails to allege facially plausible hostile work environment claims, we also conclude that the Complaint does not allege that a hostile work environment led to Plaintiff's constructive discharge in violation of Title VII, the ADA, the PHRA, or the PFPO. Accordingly, we grant the Motion to Dismiss as to Plaintiff's hostile work environment claims asserted against all Defendants in Counts II, III, V, and VIII.

C. Retaliation Claims

Defendants have moved to dismiss Plaintiff's retaliation claims based on the Early Dismissal from Work, New Uniform Rule, and Nitpicking allegations asserted against all Defendants in Counts II, IV, VI, and IX. These claims assert that Defendants retaliated against Plaintiff for engaging in protected activity by dismissing her early from work, instituting a new uniform rule, and nitpicking her appearance in violation of Title VII, the ADA, the PHRA, and the

PFPO. Defendants have also moved to dismiss Plaintiff's retaliation claims asserted against Ansardi, Mauz, and Torres in Counts VI and IX based on allegations that Defendants denied Plaintiff's requests for breaks. These claims assert that Ansardi, Mauz, and Torres retaliated against Plaintiff for engaging in protected employee activity by denying her requests for breaks in violation of the PHRA and the PFPO. Where, as here, a complaint does not allege facts that would constitute direct evidence of retaliation, a plaintiff's retaliation claims are analyzed under the McDonnell Douglas framework. Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005) (citing Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002)) (add'l citations omitted). In order to state a prima facie case of retaliation, a complaint must allege that: "'(1) [plaintiff engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 193 (3d Cir. 2015) (quoting Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007)).

An adverse employment action is "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)). The requisite causal connection may be inferred from temporal proximity between the protected activity and the alleged retaliatory act. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). "Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality . . . ." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (citations omitted). "There is no bright line rule for unusually suggestive

temporal proximity." Harrison-Harper v. Nike Inc., 788 F. App'x 846, 849 (3d Cir. 2019) (quotation omitted). The Third Circuit has "held that three months is not enough, but two days is." Id. (citing LeBoon, 503 F.3d at 233; Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)). "If the temporal proximity [alleged] is not unusually suggestive, the Court may consider whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" Baur v. Crum, 882 F. Supp. 2d 785, 803 (E.D. Pa. 2012), aff'd, 517 F. App'x 101 (3d Cir. 2013) (quoting Farrell, 206 F.3d at 280). "Among the kinds of evidence that the court may consider, are ongoing antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." Id. (citing Farrell, 206 F.3d at 279-281).

### 1. Early Dismissal from Work

Defendants argue that Plaintiff's Early Dismissal from Work allegation cannot satisfy the second element of a prima facie claim for retaliation, that Defendants engaged in an adverse employment action. "Being sent home early without a corresponding allegation of lost pay or other factor dissuading a reasonable worker from engaging in protected activity is . . . insufficient to support a retaliation claim. Fleet v. CSX Intermodal, Inc., Civ. A. No. 17-3562, 2017 WL 6520535, at *4 n.33 (E.D. Pa. Dec. 20, 2017). The Complaint alleges that "Defendants retaliated against Plaintiff by . . . sending her home for the day" after Torres overheard Plaintiff tell another employee that Torres had refused to accommodate her request that Torres watch her workstation while she went to the restroom. (Compl. ¶ 26-27.) The Complaint does not allege that Plaintiff lost pay or experienced any other material change to the terms or conditions of her employment as a result of being sent home early. We therefore conclude that the Complaint fails to allege the second element of a prima facie claim of retaliation as it relates to the Early Dismissal from Work

allegation because it does not plausibly allege that Plaintiff's early dismissal from work was an adverse employment action. Accordingly, we grant the Motion to Dismiss as to Plaintiff's retaliation claims based on the Early Dismissal from Work allegation asserted against all Defendants in Counts II, IV, VI, and IX.

### 2. *New Uniform Rule*

Defendants argue that Plaintiff's New Uniform Rule allegation cannot satisfy the third element of a prima facie claim of retaliation, i.e., the causal connection between Plaintiff's protected activity and Defendants' adverse employment action. "[A]t the prima facie stage the [complaint] must [allege facts] 'sufficient to raise the inference that [plaintiff's] protected activity was the *likely reason* for the adverse [employment] action.'" Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 259 (3d Cir. 2017) (fifth alteration in original) (quoting Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)). Plaintiff argues that the temporal proximity between her protected activity and Defendant's New Uniform Rule establishes the requisite causal connection. However, to allege temporal proximity, the Complaint must allege facts that would establish the amount of time that passed between Plaintiff's protected activity and Defendants' alleged retaliatory conduct so that we can determine whether the temporal proximity between the two events is unusually suggestive of a retaliatory motive. See Morozin v. Philadelphia Hous. Auth., Civ. A. No. 18-2174, 2019 WL 3824228, at *7 (E.D. Pa. Aug. 13, 2019) (dismissing retaliation claims because the complaint did not allege the specific dates of the protected activity and the retaliatory conduct or specify how much time elapsed between the two events); Fusco, 2009 WL 4911938, at *13 (concluding that plaintiff failed to demonstrate a causal connection between the protected activity and the alleged retaliation where plaintiff "supplied no dates to support most of the alleged discriminatory acts").

The Complaint alleges that Plaintiff filed a grievance regarding Defendants' failure to give her necessary breaks on September 16, 2017. (Compl. ¶ 32.) The Complaint also alleges that "Defendant instituted new 'rules' regarding uniforms," and that these rules were instituted "after [Plaintiff] began to report the lack of breaks." (Id. ¶ 38.) However, the Complaint does not allege exactly when Defendant implemented the New Uniform Rule. The New Uniform Rule could have been implemented as long as a month and a half after Plaintiff filed her grievance. (Compare id. ¶ 32 (alleging that Plaintiff filed her grievance on September 16, 2017) and ¶ 43 (alleging that Plaintiff resigned on November 1, 2017)). However, a retaliatory act that occurred a month and a half after protected activity would not be unusually suggestive and by itself would not be sufficient to allege a causal connection between protected activity and retaliatory conduct. See Choy v. Comcast Cable Commc'ns, LLC, 629 F. App'x 362, 365 (3d Cir. 2015) (concluding that a six-week period between plaintiff's protected activity and his termination "fails to raise an inference of causation" (citing Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014)) (add'l citation omitted)); Fleet v. CSX Intermodal, Inc., Civ. A. No. 17-3562, 2018 WL 3489245, at *16 (E.D. Pa. July 18, 2018) ("Although our court of appeals does not have a bright line rule as to what constitutes unduly suggestive temporal proximity, the time is measured in days, not weeks or months to suggest causation without corroborative evidence." (quotation omitted) (citations omitted)).[5] We conclude, accordingly, that the Complaint does not allege temporal proximity

---

[5] Plaintiff relies on Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173 (3d Cir. 1997), to argue that temporal proximity as long as four months between protected activity and an adverse employment action would suffice to allege causation. However, Kachmar does not support Plaintiff's argument. While the complaint in Kachmar alleged that the plaintiff was terminated four months following her protected activity, the plaintiff did not rely on temporal proximity to allege causation. 109 F.3d at 178. Rather, the complaint "alleged enough direct evidence of a retaliatory animus" to allege a prima facie case of retaliation in violation of Title VII. Id. The Complaint here does not allege any direct evidence of retaliatory motive on the part of Defendants. Thus, Plaintiff's reliance on Kachmar is unavailing.

between her protected activity and Defendants' institution of the New Uniform Rule that is unusually suggestive of a retaliatory motive.

In the absence of unusually suggestive temporal proximity, a retaliatory motive can also be inferred from factual allegations that would establish that Defendants gave an "inconsistent explanation for taking an adverse employment action" or "a pattern of antagonism." Carvalho-Grevious, 851 F.3d at 260 (citations omitted); see also Waddell v. Small Tube Prod., Inc., 799 F.2d 69, 73 (3d Cir. 1986) (noting that an employer's "inconsistent explanations" for refusing to rehire plaintiff could support a finding that the employer had a retaliatory motive). "'These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.'" Carvalho-Grevious, 851 F.3d at 260 (quoting Kachmar, 109 F.3d at 177); see also Morozin, 2019 WL 3824228, at *8 ("[W]here the temporal proximity of protected activity and an adverse employment action is not unusually suggestive, the Court must analyze the . . . Complaint as a whole." (citing LeBoon, 503 F.3d at 232-33)).

Here, the Complaint alleges that Defendants "retaliate[d] against Plaintiff in response to her continued requests for accommodation" by changing their uniform policy. (Compl. ¶ 38.) While Ansardi told Plaintiff that the change resulted from "an anonymous complaint from a student about Plaintiff's pants being inappropriate," she "questioned the veracity of the complaint" because "the complaint had allegedly been made on . . . a day that Plaintiff did not work." (Id. ¶ 38-39.) However, Plaintiff's suspicion that Defendants may have been lying about their real reason for changing their uniform policy is not "sufficient to raise the inference that [Plaintiff's] protected activity was the *likely reason* for the adverse [employment] action," Carvalho-Grevious, 851 F.3d at 259 (second alteration in original) (quotation omitted), because the Complaint does not allege that Defendants gave inconsistent reasons for subjecting Plaintiff to an adverse

employment action. Moreover, the Complaint, analyzed as a whole, does not allege facts that would reveal a pattern of antagonism or retaliatory animus against Plaintiff that could raise an inference of retaliatory motive. Thus, we conclude that the Complaint fails to allege the third element of a prima facie claim of retaliation as it relates to the New Uniform Rule allegation because it does not plausibly allege that there was a causal connection between Plaintiff's protected activity and Defendants' New Uniform Rule. Accordingly, we grant the Motion to Dismiss as to Plaintiff's retaliation claims based on the New Uniform Rule allegation asserted against all Defendants in Counts II, IV, VI, and IX.

### 3. Nitpicking

Defendants argue that Plaintiff's Nitpicking allegation cannot satisfy the second and third elements of a prima facie claim for retaliation. "Micromanaging by, or [i]ncreased scrutiny from, a manager or supervisor does not, under most circumstances, rise to the level of a materially adverse action . . . ." Hallman v. PPL Corp., Civ. A. No. 11-2834, 2014 WL 349714, at *11 (E.D. Pa. Jan. 31, 2014) (first alteration in original) (quotation omitted); cf. Anderson v. Boeing Co., Civ. A. No. 15-3073, 2016 WL 9446648, at *11 n.12 (E.D. Pa. Aug. 30, 2016), aff'd, 694 F. App'x 84 (3d Cir. 2017) (determining that "scolding" is not sufficiently adverse to constitute an adverse employment action). The Complaint alleges that "Defendants . . . began to nitpick Plaintiff's appearance at work, such as telling Plaintiff's [sic] that her earrings were 'too big.'" (Compl. ¶ 40.) The Complaint contains no other allegations from which we could reasonably infer that the Nitpicking was "serious and tangible enough to alter [Plaintiff's] compensation, terms, conditions, or privileges of employment." Storey, 390 F.3d at 764 (quotation omitted). Thus, we conclude that that the Complaint fails to allege the second element of a claim of retaliation as it relates to

the Nickpicking allegation because it does not plausibly allege that Defendants' nitpicking was an adverse employment action.

Furthermore, the Complaint does not specify when this nitpicking started such that we could determine whether the temporal proximity between Plaintiff's protected activity and the nitpicking was unusually suggestive of a retaliatory motive. (See Compl. ¶ 40.) Moreover, while the Complaint alleges that, when Plaintiff asked "MAUZ why he was . . . singling her out for this type of attention, he disregarded her concerns, telling her . . . that things 'aren't going to change overnight'" (id.), it does not contain any allegation that would reveal or explain Defendants' motive for this nitpicking and thus, does not plausibly allege a pattern of antagonism or retaliatory animus that could raise an inference of retaliatory motive. See, e.g., Freeman v. Philadelphia Hous. Auth., Civ. A. No. 12-1422, 2013 WL 3761274, at *24 (E.D. Pa. July 18, 2013) (concluding that defendant's remarks were not evidence of retaliatory motive where those remarks were ambiguous and did not indicate any reason for the adverse employment action). We therefore conclude that the Complaint fails to allege the third element of a claim for retaliation as it relates to the Nitpicking allegation because it does not plausibly allege that there was a causal connection between Plaintiff's protected activity and Defendants' nitpicking. Accordingly, we grant the Motion to Dismiss as to Plaintiff's retaliation claims based on the Nitpicking allegation asserted against all Defendants in Counts II, IV, VI, and IX.

### 4. Denial of Plaintiff's Requests for Breaks

Defendants argue that Plaintiff's PHRA and PFPO retaliation claims asserted against Ansardi, Mauz, and Torres based on allegations that Defendants denied Plaintiff's requests for breaks should be dismissed. According to Defendants, the Complaint does not allege facts that can establish that any of the individual Defendants personally failed to grant Plaintiff's requests

for breaks to accommodate her pregnancy and pregnancy related complications. As we discussed in Section III.A above, viewing the allegations contained in paragraphs 30, 33, and 37 of the Complaint in the light most favorable to Plaintiff, we find that the Complaint plausibly alleges that Ansardi, Mauz, and Torres had denied Plaintiff's requests for pregnancy related breaks. See DelRio-Mocci, 672 F.3d at 245 (citation omitted). We therefore conclude that Plaintiff's retaliation claims based on the denial of Plaintiff's requests for breaks should not be dismissed on this ground. Accordingly, we deny the Motion to Dismiss as to Plaintiff's retaliation claims based on allegations that Defendants denied Plaintiff's requests for breaks in violation of the PHRA and PFPO asserted against Ansardi, Mauz, and Torres in Counts VI and IX.

D. Aiding and Abetting Claims

Defendants have moved to dismiss Plaintiff's aiding and abetting claims asserted against Ansardi, Mauz, and Torres in Counts VII and X. These claims assert that Ansardi, Mauz, and Torres aided and abetted Aramark's alleged misconduct in violation of the PHRA and PFPO. "Both Pennsylvania and Philadelphia impose individual liability on any person who aids, abets, incites, compels or coerces, or directly or indirectly commits unlawful discrimination. Liability will be imposed for a supervisor's own discriminatory conduct or their failure to take action against discrimination experienced by the employee." Ahern v. Eresearch Tech., Inc., 183 F. Supp. 3d 663, 671 (E.D. Pa. 2016) (citing 43 Pa. Stat. Ann. § 955(e); Philadelphia Code. § 9-1103(h)) (add'l citations omitted). "'For liability to be imposed on an aiding and abetting theory, however, there must be a cognizable predicate offense,' i.e. a violation by the employer of the PHRA's [or PFPO's] primary anti-discrimination provision." Lombard v. Lassip, Inc., Civ. A. No. 17-964, 2017 WL 6367956, at *5 (E.D. Pa. Dec. 13, 2017) (quoting Dickinson v. Millersville Univ. of Pa., Civ. A. No. 13-5022, 2014 WL 1327610, at *5 (E.D. Pa. 2014)). "'Individual defendants cannot

violate PHRA section 955(e) [or PFPO section 9-1103(1)(h)] when there is no corresponding section 955(a) [or section 9-1103(1)] violation by an employer to aid and abet." Id. (quoting Burgess-Walls v. Brown, Civ. A. No. 11–275, 2011 WL 3702458, at *6 (E.D. Pa. Aug. 22, 2011)).[6] Defendants seek dismissal of all of Plaintiff's aiding and abetting claims on the ground that these claims lack a cognizable predicate offense, i.e., a violation of the law's primary anti-discrimination provision committed by Aramark.

1. *Discrimination Claims and Retaliation Claims Related to Allegations that Defendants Denied Plaintiff's Requests for Breaks*

Defendants do not seek dismissal of Plaintiff's discrimination claims asserted against Aramark for purposes of this Motion. Defendants also do not seek dismissal of Plaintiff's retaliation claims asserted against Aramark that are related to allegations that Defendants denied Plaintiff's requests for breaks. There is thus no basis for Defendants' argument that Plaintiff's aiding and abetting claims lack a cognizable predicate offense committed by Aramark insofar as Plaintiff's aiding and abetting claims are predicated on these discrimination and retaliation claims. Accordingly, we deny Defendants' Motion to Dismiss as to Plaintiff's aiding and abetting claims against Ansardi, Mauz, and Torres in Counts VII and X to the extent that these claims are predicated on Aramark's alleged discrimination in violation of the PHRA and PFPO. We also deny Defendants' Motion as to Plaintiff's aiding and abetting claims against Ansardi, Mauz, and Torres in Counts VII and X to the extent that these claims are predicated on Aramark's alleged retaliation related to allegations that Defendants denied Plaintiff's requests for breaks in violation of the PHRA and PFPO.

---

[6] The requirement that there must be a cognizable predicate offense committed by an employer applies to the PFPO as well as to the PHRA because "'the PHRA, and the PFPO have been interpreted in a similar fashion.'" West v. Dan Lepore & Sons Co., Civ. A. No. 17-1592, 2019 WL 1227716, at *12 (E.D. Pa. Mar. 14, 2019) (quoting Ahern, 183 F. Supp. 3d at 668).

### 2. Hostile Work Environment Claims

Plaintiff's hostile work environment claims against Aramark are dismissed because the Complaint does not state hostile work environment claims upon which relief can be granted. (See supra III.B.) Thus, the Complaint does not allege a cognizable predicate offense committed by Aramark with regard to the creation of a hostile work environment in violation of the PHRA and PFPO. Plaintiff's corresponding aiding and abetting claims must therefore be dismissed. See Dickinson, 2014 WL 1327610, at *5 (dismissing plaintiff's aiding and abetting claims brought under the PHRA because plaintiff's corresponding discrimination claim against employer was dismissed). Accordingly, we grant Defendants' Motion to Dismiss as to Plaintiff's aiding and abetting claims asserted against Ansardi, Mauz, and Torres in Counts VII and X to the extent that these claims are predicated on Aramark's alleged creation of creating a hostile work environment which led to Plaintiff's constructive discharge in violation of the PHRA and PFPO.

### 3. Retaliation Claims Related to the Early Dismissal from Work, New Uniform Rule, and Nitpicking Allegations

Plaintiff's retaliation claims related to the Early Dismissal from Work, New Uniform Rule, and Nitpicking allegations are dismissed because the Complaint does not state retaliation claims related to these allegations upon which relief can be granted. (See supra III.C.) Thus, the Complaint does not allege a cognizable predicate offense of retaliation committed by Aramark in violation of the PHRA and PFPO with regard to these claims. Plaintiff's corresponding aiding and abetting claims must therefore be dismissed. Accordingly, we grant Defendants' Motion to Dismiss as to Plaintiff's aiding and abetting claims asserted against Ansardi, Mauz, and Torres in Counts VII and X to the extent that these claims are predicated on Aramark's alleged retaliation related to the Early Dismissal from Work, New Uniform Rule, and Nitpicking allegations in violation of the PHRA and PFPO.

## IV.     CONCLUSION

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment unless an amendment would be inequitable or futile." (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002))).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  Alston, 363 F.3d at 235 (citation omitted).  "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (internal quotation omitted) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)).

For the reasons stated above, we grant Defendants' Motion to Dismiss as to claims against Ansardi, Caster, Mauz, and Torres in Counts I-IV with prejudice because there is no individual liability under Title VII and the ADA and, thus, amendment would be futile.

We grant Defendants' Motion to Dismiss as to following claims without prejudice:  (1) all claims asserted against Caster in Counts V-X; (2) the hostile work environment claims asserted against Aramark in Counts II, III, V, and VIII; (3) the hostile work environment claims asserted against Ansardi, Mauz, and Torres in Counts V and VIII; (4) the retaliation claims asserted against Aramark in Counts II, IV, VI, and IX based on the Early Dismissal from Work, New Uniform Rule, and Nitpicking allegations; (5) the retaliation claims asserted against Ansardi, Mauz, and Torres in Counts VI and IX based on the Early Dismissal from Work, New Uniform Rule, and Nitpicking allegations; (6) the aiding and abetting claims in violation of the PHRA and PFPO

asserted against Ansardi, Mauz, and Torres in Counts VII and X predicated on Aramark's alleged creation of a hostile work environment which led to Plaintiff's constructive discharge; and (7) the aiding and abetting claims in violation of the PHRA and PFPO asserted against Ansardi, Mauz, and Torres in Counts VII and X predicated on Aramark's alleged retaliation related to the Early Dismissal from Work, New Uniform Rule, and Nitpicking allegations. Plaintiff may file a second amended complaint that cures the deficiencies in these claims no later than March 25, 2020.

We deny Defendants' Motion to Dismiss as to the following claims: (1) the discrimination claims in violation of the PHRA and PFPO asserted against Ansardi, Mauz, and Torres in Counts V and VIII; (2) the retaliation claims in violation of the PHRA and PFPO asserted against Ansardi, Mauz, and Torres in Counts VI and IX based on allegations that Defendants denied Plaintiff's requests for breaks; (3) the aiding and abetting claims in violation of the PHRA and PFPO asserted against Ansardi, Mauz, and Torres in Counts VII and X predicated on Aramark's alleged discrimination; and (4) the aiding and abetting claims in violation of the PHRA and PFPO asserted against Ansardi, Mauz, and Torres in Counts VII and X predicated on Aramark's alleged retaliation related to allegations that Defendants denied Plaintiff's requests for breaks.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova
John R. Padova, J.